UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOEL ENRIQUE ROA MENDOZA,

Petitioner,

v.

MARKWAYNE MULLIN, ET AL,

Respondent.

Case No. 2:26-cv-03497-BAT

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, a detainee at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"), filed a 28 U.S.C. § 2241 habeas petition requesting the Court order: (1) his immediate release him from immigration detention; (2) declare Petitioner's detention without an individualized determination violates due process; and (3) declare Petitioner's re-detention was made in violation of statute and regulation. Dkt. 1 (petition). The Court **GRANT**S the habeas petition as follows.[1]

## BACKGROUND

Petitioner, a native and citizen of Venezuela, sought entry into the United States on January 12, 2025, as an arriving alien and through use of the CBP One mobile application. Dkt. 1 (petition); Dkt. 8 (Decl. of Kurtis Reed). On January 13, 2025, Petitioner was issued a Notice to Appear, charging him as removable from the United States under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), and ordering him

[1] The parties consented to proceed before a Magistrate Judge. Dkt. 6.

to appear before an immigration judge in removal proceedings in Portland, Oregon on March 10, 2026. Dkt. 8.

On January 13, 2025, Petitioner was paroled into the United States pending removal proceedings pursuant to INA § 212(d)(5), 8 U.S.C. § 1182(d)(5), with a parole expiration date of April 24, 2026. *Id.* No other conditions were placed upon Petitioner's parole. *Id.*

After being paroled at the San Ysidro, California port-of-entry, Petitioner established a residence in the region of Portland, Oregon. Dkt. 1. On November 12, 2025, Petitioner filed a Form I-589 Application for Asylum and for Withholding of Removal, with the Portland Immigration Court. *Id.*; Dkt. 8; *see* 8 C.F.R. § 208.4(a)(2). Through the filing of this application, he later received employment authorization. Dkt. 1. Petitioner has no history of arrests or criminal convictions in the United States. *Id.*; Dkt. 9-3 (Form I-213).

On November 20, 2025, the immigration court rescheduled Petitioner's initial master calendar hearing for March 21, 2028. Dkt. 8.

On September 1, 2026, Petitioner was pulled over and arrested by ICE officers. Dkt. 1; Dkt. 9-3 (Form I-213). He was not given any notice of the basis for his re-detention or a hearing. Dkt. 1. At the time of his arrest and detention, Petitioner was lawfully working as an independent contractor for Amazon Flex. *Id.*

On September 4, 2025, ICE filed with the immigration court Form I-830, Notice to EOIR: Alien Address, to notify the immigration court of Petitioner's detention and initiate a change of venue to the Tacoma Immigration Court. Dkt. 8. Petitioner is currently detained at the NWIPC. Dkt.1.

## DISCUSSION

Petitioner contends he was detained in violation of his Fifth Amendment right to Due Process. Dkt. 1. Respondents argue that Petitioner remains an applicant for admission under 8 U.S.C. § 1225(b)(2)(A), that his parole expired, and he is therefore lawfully detained and entitled to no additional process. Dkt. 7 at 6.

**A. Relevant Legal Standards**

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner may obtain relief by proving by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

Detention of noncitizens is governed by §§ 235-36 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. §§ 1225-26. Section 1226(a) provides the "default rule," allowing discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

Section 1225 applies to "applicants for admission" to the United States, which is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Generally, applicants for admission are subject to mandatory detention under § 1225(b) and may only be released on parole "for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

In order to be granted parole, which is a discretionary case-by-case exception to detention, parolees must be found to "present neither a security risk nor a risk of absconding[.]" 8 C.F.R. § 212.5(b); 8 U.S.C. § 1182(d)(5)(A). "A grant of parole therefore reflects a

determination that (1) urgent humanitarian reasons or significant public benefits justify release and (2) the person is not a security or flight risk." *Popova v. Blanche*, No. C26-1229-MLP, 2026 WL 1242984, at *2 (W.D. Wash. May 6, 2026); *see* 8 U.S.C. § 1182(d)(5)(A), 8 C.F.R. § 212.5(b).

Parole can terminate automatically when an individual departs from the United States or "at the expiration of the time for which parole was authorized," without written notice. 8 C.F.R. § 212.5(e)(1). Otherwise, it can be terminated when the purpose of parole has been accomplished or when an authorized Department of Homeland Security ("DHS") official determines that neither humanitarian reasons nor public benefit warrants continued presence in the United States. *Id.*; *see also* 8 U.S.C § 1182(d)(5)(A). And in such circumstances, written notice of termination is required. 8 C.F.R. § 212.5(e)(2)(i).

Furthermore, after termination of parole, "any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 212.5(e)(1). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [an authorized DHS official] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i). Thus, continued detention is required to be based on an individualized assessment, or renewed parole is required.

"Where the nominal parole period has lapsed but DHS leaves the noncitizen at liberty and continues to process applications or authorize employment, courts have inferred that parole was effectively continued beyond the stated expiration date." *Popova*, 2026 WL 1242984, at *2 (W.D. Wash. May 6, 2026). In this circumstance, any later termination must comply with the written-notice procedures of 8 C.F.R. § 212.5(e)(2)(i). *Id.*; *Telenchana v. Hermosillo*, 2026 WL

696806, at *7 (W.D. Wash. Mar. 12, 2026); *Dieng v. Hermosillo*, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026).

**B. Statutory Basis for Detention**

Respondents contend that Petitioner, as an "applicant for admission" defined in 8 U.S.C. § 1225(a)(1), is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Dkt. 7.

Petitioner was initially released on discretionary parole. Respondents assert that parole expired in April 2026 and that no further process was required upon his re-detention. But here parole was effectively extended when the government continued to process Petitioner's asylum application, allowed him to continue working under his employment authorization, and left him at liberty for over four months. *Telenchana*, 2026 WL 696806, at *7; *Dieng*, 2026 WL 411857, at *6.

The record reflects Respondents failed to comply with the governing regulations as there is no record of a determination by an authorized official that neither humanitarian reasons nor public benefit warrants continued parole, nor was written notice provided at or around the time Petitioner's parole expired. 8 C.F.R. § 212.5(e)(2)(i).

Furthermore, even if Petitioner is detained under § 1225(b) "statutory authority to detain does not obviate Respondents' obligation to comply with due process." *Telenchana*, 2026 WL 696806, at *10; *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

**C. Due Process**

The Due Process Clause applies regardless of whether the noncitizen's presence is lawful, unlawful, temporary, permanent and regardless of whether detention falls under § 1225

or § 1226. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Id.*; *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see also E.A. T.-B.*, 795 F. Supp. 3d at 1321 n.4 (collecting cases).

The Court first considers the private interest that will be affected by the official action. With respect to the first factor, Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). As to Petitioner's situation in which he was initially released upon humanitarian parole and then re-detained, this Court and numerous others in this circuit have found such individuals have a protected liberty interest in remaining out of custody. *See, e.g.*, *N.I. v. Hermosillo*, 2026 WL 770038, at *2 (W.D. Wash. Mar. 18, 2026) ("Petitioner's mandatory detention under § 1225 does not eliminate his liberty interest"); *Osuna Benitez v. Hermosillo*, 2025 WL 3763932 (W.D. Wash. Dec. 30, 2025) (collecting cases); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1025, 1032-22 (N.D. Cal. 2025) (collecting cases); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (mandatory detention under § 1225(b) despite noncitizens' due process rights and with no consideration of their deep financial, community, and familial ties in the country raises

constitutional issues); *Dieng*, 2026 WL 411857, at *3-5; *Zavorin v. Wamsley*, 2026 WL 309733, at *3-4 (W.D. Wash. Feb. 5, 2026); *Torres v. Hermosillo*, 2026 WL 145715, at * 3-5 (W.D. Wash. Jan. 20, 2026).

During the over year and a half he was at liberty, Petitioner applied for asylum (his application is pending), lived openly in his community, obtained employment authorization and maintained employment. "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d at 1136. That liberty interest exists regardless of ICE's initial discretion to release him on parole. *Id.* (citing *Pinchi*, 792 F. Supp. 3d at 1032); *see Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). The first *Mathews* factor weighs in Petitioner's favor.

Second, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. Respondents assert that because Petitioner's parole expired in April 2026, his detention during removal proceedings is valid and no additional process is required. But although the Respondents attempt to rely upon the automatic expiration of the parole in April 2026, that the Respondents continued to permit Petitioner to live and work freely for four months thereafter, continued to process Petitioner's asylum application and allowed him to continue working under his employment authorization demonstrates a constructive extension of the parole. Petitioner reasonably relied upon his continued liberty being contingent on satisfying the same conditions of parole without any indications to the contrary. There is also no evidence ICE

officers were looking to detain Petitioner based on the expiration of his parole when he was detained. Rather, the record reflects Petitioner came to the attention of ICE officers on September 1, 2026, "during enforcement operations" and they subsequently discovered his initial parole period had expired. Dkt. 9-3 at 2 (Form I-213).

Furthermore, the risk of erroneous deprivation is heightened by DHS's apparent failure to follow its own parole-termination procedures under 8 C.F.R. § 212.5(e)(2)(i), as discussed above. Courts addressing similar circumstances have found that "the risk of erroneous deprivation is significant" when DHS fails to follow its own procedures. *Torres*, 2026 WL 145715, at *7; *see also Telenchana*, 2026 WL 696806, at *7-10; *Dieng*, 2026 WL 411857, at *6-8; *Zavorin*, 2026 WL 309733, at *4. The second *Mathews* factor therefore favors Petitioner.

Third, Respondents' interest in continued civil detention is low. While the government has a strong interest in preventing noncitizens from remaining in the United States in violation of the law, *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022), the public interest in civil detention without notice or a hearing is not high, where Petitioner has no criminal history and has not shown any propensity to flee the life and work he has established over the past over year and a half. Compared to Petitioner's liberty interest, Respondents' interest in re-detaining him without procedural safeguards is low. The third factor weighs in favor of Petitioner.

The Court accordingly finds Petitioner has a protected liberty interest in his release from custody under the same conditions as his expired parole agreement and all the *Mathews* factors weigh in his favor. *See Tesara v. Wamsley*, 800 F. Supp. 3d at 1139. The Court accordingly finds Petitioner should be immediately released. *Id*. The Court also concludes that a post-deprivation bond hearing is an inadequate procedural safeguard because it occurs only after detention and thus fails to address an erroneous deprivation of liberty. *See, e.g., id.*; *cf. E.A. T.-B*, 795 F. Supp.

3d at 1323-24 (citing *Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Petitioner's petition for writ of habeas corpus (Dkt. 1) and ORDERS:

(1) The Court declares the Petitioner's continued detention violates Due Process under the Fifth Amendment.

(2) Respondents shall (a) RELEASE Petitioner within 24 hours of entry of this order under the conditions of his expired parole agreement, and (b) file a status report certifying he has been released within 48 hours of entry of this order.

Dated this 9th day of October, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge